WHITLA<br>*v.*<br>TAYLOR.

---

## JOHNSON and ERWIN et al.  *v.* PETERS and MILLARD.

The defendants had contracted to furnish their notes, payable at one, two, three, four and five
    years, but did not do so, and the plaintiffs, after the lapse of twelve years, brought suit
    against them.  *Held :* that the action was barred by prescription.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
  In this case the judgment of the district court was as follows: "This is
strictly a personal action.  C. P. art. 3.    The defendants oppose to it the pre-
scription of five and ten years.

"Personal actions, in general, are prescribed by ten years.  C. C. 3508.
Actions on negotiable notes, by five years.  Art. 3505.  The obligation of the defen-
dants, contracted in 1837, was to furnish negotiable notes, for a certain deficiency
to be determined by a future event, all payable before the year 1843.  The
deficiency was ascertained before the end of 1837.

"Prior to the period fixed for the maturity of the notes, the plaintiffs' right, if
any they had, against the defendants, was limited to an action to compel them to
furnish their notes according to contract; the alternative right of rescinding the
contract is not now in question.  After the period of maturity, an action to com-
pel the furnishing of notes past due would have been as absurd as unnecessary,
for the right to exact the amounts that would then have been due on the notes,
if they had been furnished, was perfect.    At all events, the right to institute
such an action is barred in ten years; and more than twelve had elapsed from
the time the deficiency was ascertained, when this suit was brought.  On the
other hand, more than five years had also elapsed since the period at which the
notes would have matured if they had been furnished.  The defendants must
be treated either as having executed their contract by giving notes, or as having
refused so to execute it; they are entitled to one or the other of these two posi-
tions.  The prescription of five years covers the first position; the prescription
of ten, the second; unless the plaintiffs can bring themselves within the excep-
tion "*contra non valentem,*" &c.    This was attempted by an argument that
*Erwin,* the plaintiffs' assignor, had no right of action until the mortgage on the
square sold was raised.  There are two answers to this: 1st. That *Erwin* was
the party bound to raise the mortgage; and if he did not raise it sooner, it was his
own fault.  2d. That the defendants could not have defended themselves, on that

ground, in an action for a specific performance, for the reason that the raising of the mortgage was not made a condition precedent to the furnishing of any of the notes, nor to the payment of any of them, except the notes amounting to about $100,000, which were, by agreement, to remain on deposit with the notary. These notes, it will be observed by reference to the auctioneer's *proces verbal*, were the notes to be furnished by the purchasers at the sale, in payment of the price of adjudication. The object of this special deposit to double the amount of the mortgage, was clearly to make the parties safe in executing the contract in all its other parts, and to leave them no legal excuse for backing out; and the security was ample.

"For the reasons assigned in the written opinion of the court, this day delivered and on file, it is adjudged and decreed, that the peremptory exception filed by the defendants be maintained, and that the plaintiffs' petition be dismissed, with costs."

*Thomas* and *Snyder*, for plaintiffs.  *H. Lockett*, for defendants.

The judgment of the court was pronounced by

SLIDELL, J.  We concur with the district judge in the opinion that the defendants are protected by prescription.

It is therefore decreed, that the judgment of the district court be affirmed, with costs.

ROST, J., dissenting.  *Green* and *Ogilvie* made an agreement, by which they bound themselves to pay *James Erwin* the sum of $320,000 on certain terms of credit, for a square of ground belonging to him in this city, on condition that it should be divided into lots and sold at public auction on the terms agreed upon for the price, and that *Erwin* should make titles to the purchasers, and receive in payment their notes satisfactorily endorsed; *Green* and *Ogilvie* to receive the surplus of the sale over the price, or to account for the deficiency as the case might be. These parties then made a contract with a company, in which they bound themselves to take all the necessary steps to have the ground divided into lots; to cause those lots to be sold at public auction within a given time, and to account to the company for all that might remain from the net proceeds of the sale, after paying *James Erwin* $320,000, and retaining for their trouble and labor in effecting the sale, and as a profit upon their purchase, the further sum of $30,000; and in case the net proceeds of the sale were less than $350,000, the members of the company agreed each to furnish, for the deficiency in proportion to the amount of their stock, six notes satisfactorily endorsed : the first payable six months after the day when the deficiency was ascertained, and the other five in one, two, three, four and five years from that date, these being the terms on which the property was to be sold.

The square was accordingly divided into lots, and on the 29th March, 1837, a public sale was effected in presence of the defendants, who purchased some of the lots. The aggregate amount of that sale was $291,400; but it was reduced by a re-sale of part of the property rendered necessary by the failure of the purchasers to comply with the terms of the sale. The re-sale took place on the 29th June, 1837, and the loss sustained in consequence of it, amounts to the sum of $11,307 50, thus reducing the actual amount of the sale to $284,092 50, which was received by *James Erwin*, in the notes of the purchasers, and leaving a clear loss to the company of $69,907 50. Of this sum, $39,907 50, with the stipulated interest at six per cent, was to make good the sum of $320,000 to *James Erwin* at the date of the sale, and the remaining $30,000 were to be paid to *Green* and *Ogilvie*.

The defendants held stock of the company to the amount of $20,000, and this suit was instituted by the assignees of *Erwin*, and by *Green* and *Ogilvie*, to recover from them the proportion of the loss which they assumed to pay.

*Green* and *Ogilvie* discontinued the suit, so far as they were concerned, and there was judgment in favor of the defendants, against the other plaintiffs, on the ground of prescription. The latter have appealed.

I do not think that the facts of this case admit of any reasonable doubt. *James Erwin* accepted the stipulations in his favor contained in the agreement between *Green* and *Ogilvie* and the company, by recording the *proces verbal* of the auction sale, making titles to the purchasers and receiving their notes in payment, in conformity with that agreement.

The defendants having been present at the sale, had notice of the mortgage existing upon the property, and of the provision which was made to secure the purchasers against it. That mortgage was subsequently raised, and they cannot now set up its existence at the time of the sale, in avoidance of their obligation.

At the re-sale, *Green* and *Ogilvie* were acting for the defendants and in their presence; and so far as *Erwin* is concerned, the defendants are as much bound by the acts of these parties as they would be by their own. They never objected to the proceeding, and the loss sustained should be determined by the re-sale.

The main ground of defence is, that this action is based on the alleged promise to give notes for the deficiency, and that taking the 29th June, 1837, the day of the re-sale, as the day on which the deficiency was ascertained, and *James Erwin* had the right to demand these notes, more than ten years elapsed from that day to the institution of the suit, and the claim is barred by prescription.

I do not understand this action to be on the promise to give notes for the deficiency, but rather on the promise to pay the deficiency. The giving of notes was subsidiary to the principal obligation, and could be dispensed with without impairing it.

The omission of *Erwin* to require the security which the defendants were bound to give, amounts to a waiver of it on his part, and leaves unimpaired their obligation to contribute to the payment of the loss upon the sale.

Had notes been given, they would have been barred by the prescription of five years. As the case stands, the prescription of personal actions can alone be invoked, and the ten years necessary to perfect it should be counted on each installment from the day of its maturity. Under this view of the law, the three first installments are barred by lapse of time, and the three last only can be recovered.

*Green* and *Ogilvie* having discontinued their suit, and the first three installments of the claim of the other plaintiffs being prescribed, that claim should be limited to one-half of the *pro rata* proportion of the loss upon $39,907 50, the amount remaining due to *James Erwin*, for this sum, divided into three equal installments, falling due respectively on the 29th of June, 1840, 1841 and 1842, and interest at six per cent after maturity, I am of opinion the plaintiffs are entitled to a judgment.